UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DANOS MARINE, INC.,** | **\*CIVIL ACTION** |
| **ET AL.** | **\*** |
| | **\*** |
| **V.** | **\*NO. 07-2675** |
| | **\*** |
| **CERTAIN UNDERWRITERS AT** | **\*** |
| **LLOYD'S SUBSCRIBING TO POLICY** | **\*** |
| **NO. COI-3400773, ET AL.** | **\*SECTION "L"(4)** |

### ORDER & REASONS

Before the Court is Plaintiffs Danos Marine Inc. And Danos & Curole Marine Contractors, L.L.C..'s Motion for Partial Summary Judgment (Rec. Doc. No. 7), the Defendants' Motion to Strike (Rec. Doc. Nos. 48 and 51) and Defendants Certain Primary Protection and Indemnity Underwriters, Certain Excess Protection and Indemnity Underwriters' Motion for Summary Judgment (Rec. Doc. No. 38).  For the following reasons, the Defendants' Motion for Summary Judgment is DENIED, the Defendant's Motion to Strike is DENIED, and the Plaintiffs' Motion for Summary Judgment is DENIED.

**I.      BACKGROUND**

This litigation is the result of the capsizing and sinking of the liftboat ANDRE DANOS, off the coast of Louisiana into the Gulf of Mexico as a result of Hurricane Katrina. At the time of capsizing the vessel was owned by Plaintiff Danos Marine, Inc. and operated by Plaintiff Danos & Curole Marine Contractors. In August of 2005 the ANDRE DANOS was insured for protection and indemnity risks. On August 29, 2005, in the midst of Hurricane Katrina, the vessel capsized and sank on its side. The Plaintiffs entered into an Asset Purchase Agreement ("APA") dated September 17, 2005, with Hercules Liftboat Companies, L.L.C.

("Hercules") . In the APA, which consisted of some nine vessels including the ANDRE DANOS, the Plaintiffs agreed to sell assets to Hercules in consideration for $44 million. The closing date identified in the APA was November 8, 2005, except that with regard to the ANDRE DANOS title would transfer at the later of the closing or completion of repairs. While the Plaintiffs contracted with Coral Marine, Inc. to raise the ANDRE DANOS in September of 2005, they later cancelled this contract and entered into a new contract with Bisso Marine Company, Inc. ("Bisso") to salvage the vessel. The cost of raising the vessel exceeded $2,000,000. The Plaintiffs have sued the Defendants, the vessel's underwriters, to recover these amounts.

The Plaintiffs allege that the ANDRE DANOS was insured under P&I policies issued by the Defendants that covered wreck removal when such removal is compulsory by law. The Plaintiffs allege that their raising and removal of the ANDRE DANOS was compulsory by law pursuant to their duty under the Wreck Act, 33 U.S.C. § 409, *et seq.* The Defendants have denied coverage under the P&I policies and have declined to pay the Plaintiffs' claim. The Defendants allege that the removal was not compulsory because the Plaintiff was not the owner at the time of salvage and that the loss did not occur during the policy term because the ANDRE DANOS was not raised until the polices expired.

## II.     THE MOTIONS

The Defendants now seek summary judgment dismissing the Plaintiffs' claims.  The Defendants argue that under the policies the Defendants had no coverage obligations to the Plaintiffs.  First, the Defendants argue that at the time the Plaintiffs incurred expenses to raise the vessel, the Plaintiffs had transferred title to the ANDRE DANOS to Hercules and therefore, they were under no legal compulsion to raise the vessel.  The Defendants claim that the vessel was sold on November 8, 2005, and the Plaintiff did not enter the contract to salvage the vessel with

Bisso until May 16, 2006. Further, the Defendants argue that the Plaintiffs were not under any legal obligation to raise the vessel in that there was no order from the government nor were the Plaintiffs under any statutory duty to raise the vessel. The Defendants also argue that the Plaintiffs' expenses were not reasonably incurred, that any contractual obligation of the Plaintiffs to raise the vessel is excluded, that the Plaintiffs have made material misrepresentations to the Defendants which voids coverage, that the policies issued by the Defendants exclude coverage for liabilities covered under a hull policy and these expenses are sue and labor expenses covered under the hull policy, and that the wreck removal occurred long after the policies issued by the Defendants had expired.

In the Plaintiffs' motion for summary judgment and in opposition to the Defendants' motion, the Plaintiffs argue that ownership of the ANDRE DANOS never passed to Hercules and at all pertinent times remained the property of the Plaintiffs. The Plaintiffs characterize the contract with Hercules as a contract to sell, identifying a future date to transfer title. The Plaintiffs argue that the title had not yet been transferred under the terms of the contract because the vessel was not available for delivery, and accordingly, no bill of sale was executed. Further, in the Plaintiffs' motion for summary judgment, the Plaintiffs argue that they were under a legal obligation under the Wreck Act, 33 U.S.C. § 409, *et seq.* to raise the ANDRE DANOS. The Plaintiffs argue that a government order is not necessary in order for removal to be compulsory under the amended Wreck Act.

The Defendants have also filed a motion to strike certain evidence submitted in support of Plaintiffs' opposition to summary judgment. The Defendants argue that the sworn statements of Marjorie F. Krumholz, Virginia Boulet, and Philip T. Broderick, the Addendum to Supplement to First Preferred Fleet Mortgage, and the excerpts of depositions of Garret Henry

"Hank" Danos and Jack Mulvihill constitute an attempt by the Plaintiffs to circumvent the parol evidence rule to change the terms of an unambiguous contract. The Defendants have also moved to strike the sworn statements of Plaintiffs' Exhibits 1, 3 and 14 submitted in Plaintiffs' Opposition Memorandum to the Defednants' Motion for Summary Judgment for non-compliance with Rule 26 of the Federal Rules of Civil Procedure. In response, the Plaintiffs argue that the Court should have all information before it in order to make its decision. The Plaintiffs argue that the sworn statements are not formal expert reports, and therefore are not subject to all the Rule 26 formalities. The Plaintiffs further argue that if the Court finds that it must look beyond the four corners of the contract in order to construe ambiguities in the contract, then parol evidence is admissible and this evidence should be considered to aid in the construction of the contract.

## III.     LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate in a case if "there is no genuine issues as to any material fact." Fed. R. Civ. P. 56(c). "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Products Liability Litigation*, 2007 WL 1952964, *4 (E.D. La. July 3, 2007). In determining whether a genuine issue of material fact exists, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal SYS., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). But because "only those disputes over facts that might affect the outcome of the lawsuit under governing substantive law will preclude summary judgment," questions that are unnecessary to the resolution of a particular issue "will not be counted." *Phillips Oil Co. v. O.C. Corp.*, 812 F.2d 265, 272 (5th Cir. 1987).

### B. Ownership of the ANDRE DANOS

The Defendants argue that title to the ANDRE DANOS passed from the Plaintiffs to Hercules as of November 8, 2005, the closing of the APA between the Plaintiff and Hercules. The Plaintiffs argue that title never passed to Hercules, as demonstrated by a proper reading of the asset purchase agreement. The Defendants argue that the Plaintiffs' position relies upon inadmissible parol evidence. Because the Court decides this issue based on the unambiguous terms of the contract, it need not address the Defendants' arguments regarding parol evidence.

The interpretation of a contract involving the sale of a vessel is ordinarily governed by state law. *St. Paul Fire and Marine Ins. Co. V. Vest Transportation Company, Inc*., 666 F.2d 932 (5th Cir. 1982). The ANDRE DANOS was sold in Texas and the parties agreed that the agreement will be governed in accordance with the laws of the State of Texas. *See*, APA, § 11.8, Ex. D to Def.'s Motion for Summary Judgment, Rec. Doc. No. 38-8.

When construing a contract under Texas law, the court's primary concern is to give effect to the written expression of the parties' intent. *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983); *R & P Enterprises v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517, 518 (Tex. 1980). The court is bound to read all parts of a contract together to ascertain the agreement of the parties. *See Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 180 (Tex. 1965); *Pan Am. Life Ins. Co. v. Andrews*, 161 Tex. 391, 340 S.W.2d 787 (1960). The contract must be considered as a whole, and all integral parts must be construed together. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex. 1987); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Miles v. Briggs,* 18 S.W.2d 850 (Tex. Civ. App. San Antonio 1929, writ dismissed). Moreover, each part of the contract should be given effect. *See Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987).

Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered. *Enterprise Leasing Company of Houston v. Barrios*, 156 S.W.3d 547 (Tex. 2004). If the contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Id*. Terms are given their plain, ordinary and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118 (Tex. 1996).

The APA provides that "[a]t the Closing, on the terms and subject to the conditions set forth in this Agreement, the Sellers will convey, transfer, assign, and deliver to the Buyer ... the Vessels listed on Schedule 1.1A of the Disclosure Schedules." *See*, APA, §1.1, Ex. D to Def.'s Motion for Summary Judgment, Rec. Doc. No. 38-8. Schedule 1.1A lists the ANDRE DANOS. *Id.* at Schedule 1.1A. Further, the APA provides that "[a]t the Effective Time, title, ownership and possession of the Purchased Assets shall pass to Buyer and Buyer shall take possession of the Purchased Assets free and clear of all Encumbrances wherever they are located at the Effective Time." *Id.* at § 2.2 of the APA. At the Closing, the Plaintiffs were required to deliver bills of sale for the vessels in suitable form for recording with the U.S. Coast Guard. The APA further has a section devoted specifically to the ANDRE DANOS which states in full:

> The Sellers agree that they will, as soon as is reasonably practical following the date of this Agreement, salvage and repair (to the extent it is not a Total Loss) the *Andre Danos*. The Seller shall use their commercially reasonable best efforts to pursue their insurance claims. If the vessel is not a Total Loss, the Sellers shall cause the *Andre Danos* to be repaired in a reputable shipyard, to be mutually

> agreed to by the Buyer and the Sellers, and shall apply all available insurance proceeds toward the repair of the *Andre Danos*. Once insurance proceeds are completely expended, should additional repairs to the *Andre Danos* be required, Buyer will be responsible for funding such repairs. If it is determined that the damage to the *Andre Danos* suffered during Hurricane Katrina and/or during the salvage operation has resulted in the vessel being a Total Loss, then the Purchase Price shall be adjusted downward by an amount equal to the total insurance proceeds paid to the Sellers with respect to the *Andre Danos*. If the full Purchase Price has already been paid, then the Sellers will reimburse the Buyer for any amounts that would have been deducted from the Purchase Price under the previous sentence. Nothing in this Section 6.8 will effect the Buyer's obligation to pay the salvage costs of the *Andre Danos* and to pay the deductible under the Sellers' applicable insurance policies, as provided in Section 1.3 hereof. Notwithstanding anything to the contrary set forth herein, delivery of the *Andre Danos* shall occur on the later to occur of (1) the Closing, and (2) upon completion of such repairs. The Sellers shall deliver, and the Buyer shall accept, the *Andre Danos* in federal or international waters in the Gulf of Mexico.

*Id.* at § 6.8. The APA is governed by Texas law.

The section specifically dedicated to the ANDRE DANOS indicates that the parties intended to treat her differently than the other assets. The term "delivery" is not a defined term in the agreement. Delivery is defined as "[t]he formal act of transferring something, such as a deed; the giving or yielding possession or control of something to another." Black's Law Dictionary, p. 461 (8th Ed. 1999). By using the term "delivery" in section 6.8, the parties indicated their intent to treat the title of the ANDRE DANOS differently in that title to the ANDRE DANOS would not pass until the later of the closing or the repair of the vessel.

The Court finds that the APA delineates different dates for the transfer of title of the ANDRE DANOS depending upon the condition of the vessel. Section 6.8 states that the "delivery" would take place at the later of the Closing or the completion of repairs to the ANDRE DANOS. Section 6.8 states that if the vessel is not a "Total Loss" the sellers "shall

cause the *Andre Danos* to be repaired[.]" In that case, delivery was not to occur at the closing, but "upon completion of such repairs." Thus, if the vessel was not a total loss, the Plaintiffs did not transfer title at the closing and remained the owners of the DANOS MARINE.

If the vessel was a total loss, however, the sellers are not expected to conduct repairs. Section 6.8 states that if the vessel is a total loss, "the Purchase Price shall be adjusted downward[.]" The contract does not provide for repairs in the event the vessel is a total loss. Accordingly, if the vessel was a total loss, delivery was to occur on the Closing, and title was to be transferred on that date. The parties dispute whether the vessel was a total loss.

Although the Court finds that as a matter of law the contract is not ambiguous with respect to the ANDRE DANOS, unresolved factual issues remain as to whether the ANDRE DANOS was a total loss. This is an essential issue to determine the date on which title to the ANDRE DANOS was transferred. Accordingly, summary judgment on this issue is inappropriate at this time. Because the Court finds that it need look no further than the four corners of the agreement to construe the contract, the Defendant's motions to strike are moot at this time.

### C. Whether the Plaintiffs' Salvage of the ANDRE DANOS Was Compulsory by Law

The insurance policies issued by the Defendants provide coverage for costs for salvage when the salvage is "compulsory by law." The Defendants argue that the Plaintiffs were under no compulsion to salvage the ANDRE DANOS in that they were no longer the owners of the vessel and that the salvage here does not meet the standard established by *Continental Oil Company v. Bonanza Corp.*, 706 F.2d 1365 (5th Cir. 1983). The Plaintiffs argue that this removal satisfied the requirements for coverage; it had a duty to try and raise the vessel under the Wreck Act and removal was compulsory under *Bonanza*.

The Wreck Act provides, in relevant part, that "whenever a vessel ... is wrecked and sunk in a navigable channel, it shall be the duty of the owner, lessee, or operator to immediately mark it ... and to maintain such marks until the sunken vessel is removed or abandoned ...; and it shall be the duty of the owner, lessee, or operator of such sunken craft to commence the immediate removal of the same, and to prosecute such removal differently."  33 U.S.C. § 409. Even if the Plaintiffs were still the owners of the vessel, the Defendants argue that obligations under the Wreck Act do not arise until the vessel is declared a wreck, which occurred after the Plaintiffs incurred the costs to salvage the vessel.

The Fifth Circuit has stated that "[t]he duty of an owner whose actions are responsible for the sinking is non-delegable and inescapable." *Tennessee Valley Sand & gravel Co. v. M/V Delta*, 598 F.2d 930, 933 (5th Cir. 1979). It has also stated that "the owner of a vessel sunk without any negligence on his part is still subject to the statutory obligation to remove the wreck." *Id*. at 934 (5th Cir. 1979).  The Defendant's Wreck Act arguments focus on the issue that the Plaintiffs were no longer the owners of the ANDRE DANOS and therefore had no Wreck Act obligations.  Given that the Court finds that a factual issue exists as to whether the Plaintiffs still owned the ANDRE DANOS, resolution of this issue is inappropriate at this time.

Under *Continental Oil Co. v. Bonanza Corp.*, the Fifth Circuit in interpreting the "compulsory by law" phrase in P&I policies stated that removal of a vessel may be "compulsory by law" despite the absence of a government order when "when a reasonable owner, fully informed, would conclude that failure to remove would likely expose him to liability imposed by law sufficiently great in amount and probability of occurrence to justify the expense of removal." 7-6 F/3d 1365. 1372 (5th Cir. 1983).

The Defendants argue that there is a complete lack of any established or severe

sanctions that would impel the Plaintiffs to incur the costs of raising the vessel.  Further, any fear of third-party liability would be non-existent due to an indemnity clause in the APA.  The Plaintiffs argue that the Plaintiffs felt this was a serious danger to navigation and presented possible exposure to third-party liability.  A factual issue exists as to whether a reasonable owner would have felt compelled to raise the ANDRE DANOS. Accordingly, summary judgment on this issue is inappropriate at this time.

### D. Whether the Plaintiffs Made Misrepresentations that Would Void Coverage

The Defendants argue that when the Plaintiffs submitted their claim for salvage costs, they intentionally misrepresented the amount of the claim, thereby allowing Defendants to void coverage.  Specifically, the Defendants state that the Plaintiffs inflated their claim by $500,000, the amount the Plaintiffs received from Hercules to pay for salvage costs of the ANDRE DANOS.

The Plaintiffs argue that the Defendants are not entitled to an off-set for the $500,000 amount and that under the terms of the policy, the Defendants are required to pay for the salvage costs incurred by the Plaintiffs. The Plaintiffs claim that the $500,000 they received from Hercules was not meant as a payment to salvage costs.  Rather, the Plaintiffs argue that they earned this amount under the terms of the APA.  The APA required the Plaintiffs to try and raise and repair the ANDRE DANOS in consideration for $500,000.

The nature and extent of the payment of $500,000 and the issue of whether it was "intentionally" misrepresented to the Defendants, raise fact issues that make summary judgment on this point improper at this time.

### E. Whether the Salvage Costs for the ANDRE DANOS Were Sue and Labor Expenses Excluded from Coverage

The Defendants also argue that the salvage costs incurred to raise the ANDRE DANOS were sue and labor expenses and therefore excluded under the P&I policy. The P&I policy contains a standard "hull exclusion" which excludes coverage for costs that would otherwise be covered under a hull policy. The Plaintiffs argue that the hull policy covering the ANDRE DANOS covers sue and labor expenses, and, accordingly, such expenses are excluded under the P&I policy.

The Defendants argue that from the time the ANDRE DANOS sank it was likely a total loss and the Plaintiffs considered it so from the beginning. The Plaintiffs argue that the purpose of raising the ANDRE DANOS was to mitigate liability, and any possible repair of the ANDRE DANOS was a secondary consideration. Accordingly, all of the salvage costs were incurred as wreck removal and not sue and labor.

As the Third Circuit has stated "the purpose of the sue and labor clause is to reimburse the insured for costs incurred to satisfy the insured's duty to the insurer. If the insured acts to prevent a loss that is not covered by the policy, there is no duty or benefit to insurer; the obligation only exists when the action taken is to prevent a loss for which the underwriter would be liable." *GTE Corp. v. Allendale Mutual Ins. Co.*, 372 F.3d 598, 618 (3d Cir. 2004) (quoting *GTE Corp. v. Allendale Mutual Ins. Co.*, 258 F. Supp. 2d 364, 373 (D.N.J. 2003)) (internal quotation marks and alterations omitted).

The Plaintiffs claim that the intent behind attempting to raise the ANDRE DANOS was to reduce any potential liability, and that it was only a secondary consideration to repair the vessel. The Defendants argue that the APA created an obligation to attempt to raise the ANDRE DANOS and repair it, and that was the purpose behind incurring the salvage costs. A factual issue exists as to the intent behind the attempted raising of the ANDRE DANOS, and summary

judgement would be inappropriate at this time.

### F. Whether the Incurring of Salvage Costs Occurred After the P&I Policies Expired

Finally, the Defendants claim that the P&I policies they issued covering the ANDRE DANOS lapsed between the sinking of the vessel and the Plaintiffs' incurring of salvage costs. They argue that because of this, they are not obligated to cover the salvage costs. The Plaintiffs argue that coverage under the P&I did not require removal to occur before the expiration of the policies, as long as the compulsion to raise the vessel arose before the expiration of the P& I policies.

The Defendants cite to *East Coast Tender Service, Inc. V. Robert P. Wintzinger, Inc.*, in support of their position that they are not required to cover salvage costs when such costs were incurred after the P&I policy expires. 759 F.2d 280 (3d Cir. 1985). However, the Defendants' reliance is misplaced. The Court in *East Coast Tender* did not hold that if salvage costs are incurred after the expiration of the policy, an insurer is automatically not obligated to pay; rather the Court held that the determination of whether the salvage costs are covered is essentially a fact issue. 759 F.2d at 286. The Court held "that the reasonable expectations of the parties under the insurance contract will govern when the legal compulsion to remove must arise. By so holding, we do not foreclose as a matter of law that an insured may recover removal costs even if the legal compulsion arises outside the term of the policy." *Id.* The Court provided the following example: "Thus, an insured whose vessel begins to sink during the evening before his policy expires may well be covered even if a legal obligation to remove the wreck does not arise until later the next morning, after the expiration of the policy." *Id.*

While the Plaintiffs contracted with Coral Marine Services to raise the vessel in

September of 2005, they later cancelled this contract and entered into a new contract with Bisso to salvage the vessel. There is an unresolved issue of fact as to when the "compulsion by law" arose in this case and therefore summary judgment is inappropriate at this time.

**IV.      CONCLUSION**

The Court finds that numerous factual issues relating to ownership of the DANOS MARINE, whether a reasonable owner would have felt compelled to raise the vessel, whether the Plaintiff made misrepresentations, and the nature of the salvage costs.

Accordingly, for the foregoing reasons, IT IS ORDERED that the Defendant's Motion for Summary Judgment is DENIED, and the Plaintiff's Motion for Summary Judgment is DENIED. Because the Court finds that it need look no further than the four corners of the agreement to construe the contract, the Motion to Strike by Defendants (Rec. Doc. No. 48) is DENIED as MOOT. Accordingly, the Motion to Strike by Defendants (Rec. Doc. No. 51) is also MOOT.

New Orleans, Louisiana this 17th day of November, 2008.

_____
UNITED STATES DISTRICT JUDGE