UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DANOS MARINE, INC., and DANOS & CUROLE MARINE CONTRACTORS, L.L.C.** | *CIVIL ACTION* <br> * <br> * |
| V. | *NO. 07-2675* <br> * |
| **CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO POLICY NO. COI-3400773, CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO POLICY No. LFO21040T** | * <br> * <br> *SECTION "L"(4) <br> * |

## ORDER & REASONS

Before the Court is Plaintiffs Danos Marine Inc. and Danos & Curole Marine Contractors, L.L.C.'s Motion for Partial Summary Judgment (Rec. Doc. No. 106), and Defendants Certain Primary Protection and Indemnity Underwriters, Certain Excess Protection and Indemnity Underwriters' Motion for Summary Judgment (Rec. Doc. No. 101). For the following reasons, the Plaintiffs' Motion for Partial Summary Judgment is GRANTED and the Defendants' Motion for Summary Judgment is GRANTED.

## I.     BACKGROUND

This litigation is the result of the capsizing and sinking of the liftboat ANDRE DANOS, which was owned by Plaintiff Danos Marine, Inc. and operated by Plaintiff Danos & Curole Marine Contractors, off the coast of Louisiana into the Gulf of Mexico as a result of Hurricane Katrina. The Plaintiffs raised and removed the ANDRE DANOS on or about May 24, 2006, allegedly incurring expenses in the amount of $2,049,911.22.[1] The Plaintiffs allege that the ANDRE DANOS was insured under P&I policies issued by the Defendants that covered wreck

---

[1] Only Danos & Curole Marine Contractors, L.L.C. incurred these expenses.

removal when such removal is compulsory by law; Plaintiffs allege that their raising and removal of the ANDRE DANOS was compulsory by law pursuant to their duty under the Wreck Act, 33 U.S.C. § 409, *et seq.*

This saga began in the wake of Hurricane Katrina. On September 17, 2005, three weeks after Katrina, the Plaintiffs entered into an Asset Purchase Agreement ("APA") with Hercules Liftboat Companies, L.L.C. ("Hercules"). The Plaintiffs agreed to sell some eight vessels[2] to Hercules for $44 million, including the ANDRE DANOS which had sunk in the hurricane and was at the bottom of the Gulf of Mexico, and which was allotted some $4 million of the total sum. The closing date identified in the APA was November 8, 2005. Several months after the closing, Danos & Curole and Danos Marine raised and removed the vessel and thereafter, presented a $2,049,911.22 cost/expense claim to the Defendant. When the claim was submitted, Danos Marine represented that at the time of the sinking it owned the ANDRE DANOS and Danos & Curole represented it was the bareboat charterer of the vessel. Because of their status these entities concluded they had a legal duty under the Wreck Act to raise and remove the sunken vessel. They sought reimbursement for the amounts expended as covered claims under the terms of the policy. The Defendants have denied coverage under the P&I policies. The parties dispute whether the legal duty to raise the ANDRE DANOS passed to Hercules on November 8, 2005 and whether removal was compulsory under the law. Furthermore, the parties dispute the effect of the $4 million allotted out of the purchase price for the ANDRE DANOS.

On November 18, 2008, the Court denied the parties' motions for summary

---

[2]The ANDRE DANOS and the SARAH DAVID were owned by Danos Marine. The others were owned by Danos & Curole.

judgment, finding that genuine issues of material fact existed as to whether the vessel was a total loss and whether ownership of the vessel had transferred, whether the Plaintiffs made misrepresentations that would void coverage, whether the salvage costs for the ANDRE DANOS were sue and labor expenses excluded from coverage, and whether the incurring of salvage costs occurred after the P&I policies expired.

## II.     THE MOTIONS

The Plaintiffs now move for partial summary judgment, arguing that their duty under the Wreck Act cannot be eliminated by a post-sinking, pre-raising sale of the vessel. The Plaintiffs argue that because the duty of a vessel owner under the Wreck Act to mark and remove its vessel that has sunk in navigable waters is non-delegable, the factual issue of when they sold the vessel is irrelevant. The Plaintiffs take the position that their duty under the statute attached at the sinking and is continuing, and nothing in the statute suggests that this duty ends when the vessel is subsequently sold to another entity. In response, the Defendants argue that the Wreck Act does not apply to former owners or operators of wrecked and sunken vessels, and that a factual dispute remains as to whether the expenses incurred by Plaintiffs' removal of the ANDRE DANOS were reasonable.

The Defendants also now move for summary judgment dismissing the Plaintiffs' claims against them. The Defendants argue that the Plaintiffs received $4 million for the sale of the capsized vessel and that this amount must be deducted from any claim for wreck removal reimbursement. The Defendants note that the Plaintiffs' claim is for less than $4 million; thus, they argue, the Plaintiffs' claim must be dismissed. In response, the Plaintiffs point out that the ANDRE DANOS was valueless after it was salvaged; thus the Defendants are not entitled to any offset in the Plaintiffs' recovery of the costs of wreck removal.

## III. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate in a case if "there is no genuine issues as to any material fact." Fed. R. Civ. P. 56(c). "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Products Liability Litigation*, 2007 WL 1952964, *4 (E.D. La. July 3, 2007). In determining whether a genuine issue of material fact exists, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal SYS., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). But because "only those disputes over facts that might affect the outcome of the lawsuit under governing substantive law will preclude summary judgment," questions that are unnecessary to the resolution of a particular issue "will not be counted." *Phillips Oil Co. v. O.C. Corp.*, 812 F.2d 265, 272 (5th Cir. 1987).

### B. Motion for Summary Judgment as to Plaintiffs' Wreck Act Duty

The insurance policies issued by the Defendants provide coverage for costs of salvage when the salvage is "compulsory by law." The Plaintiffs argue that they had a non-delegable duty to attempt to raise the vessel under the Wreck Act and thus removal was compulsory under law. *Tennessee Sand & Gravel Co. v. M/V DELTA*, 598 F.2d 930, 933 (5th Cir. 1979). The Defendants argue that the plain language of the Wreck Act controls, and the statute places the duty on the owner and makes no mention of former owners; thus, wreck removal by former owners such as the Plaintiffs is not compulsory by law.

In *Continental Oil Co. v. Bonanza Corp.*, the Fifth Circuit, in interpreting the "compulsory by law" phrase in P&I policies, stated that removal of a vessel may be "compulsory by law" despite the absence of a government order "when a reasonable owner, fully informed,

would conclude that failure to remove would likely expose him to liability imposed by law sufficiently great in amount and probability of occurrence to justify the expense of removal." 706 F.2d 1365, 1372 (5th Cir. 1983). Although the reasonableness of the cost of wreck removal may be a factual issue, the parties request that the Court address the legal issue of whether the duty imposed by the Wreck Act on a vessel owner to mark and remove a sunken vessel is eradicated by a post-sinking, pre-raising sale of the vessel to a third party.

The Wreck Act states that "whenever a vessel ... is wrecked and sunk in a navigable channel, it shall be the duty of the owner, lessee, or operator of such sunken craft to immediately mark it ... and to maintain such marks until the sunken craft is removed or abandoned ...; and it shall be the duty of the owner, lessee, or operator of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently..." 33 U.S.C. § 409.

The Wreck Act was intended to prevent obstructions in the nation's waterways,[3] to deter the avoidable sinking of vessels by imposing financial sanctions upon intentional or negligent sinkings,[4] and to protect other vessels plying the same waters.[5]

Permitting an owner to escape his duties under the Wreck Act by selling a sunken vessel would frustrate the purpose of the statute. In order to prevent dangers to navigation, the Wreck Act imposes upon owners the *immediate* duty to remove. This duty is continuous and non-delegable. Otherwise, a vessel owner could escape responsibility under the Wreck Act by selling the sunken vessel to an entity lacking the financial resources to effectuate the immediate removal of the obstruction. The vessel would remain, potentially endangering navigation, until

---

[3] *Wyandotte Transportation Co. V. United States*, 389 U.S. 191, 201 (1967).

[4] *U.S. v. Ohio Barge Lines, Inc.*, 607 F.2d 624 (3rd Cir. 1979).

[5] *U.S. v. Raven*, 500 F.2d 728 (5th Cir. 1974).

the government determines that the new owner's failure to diligently remove the vessel constitutes abandonment. The Court declines to find that the Wreck Act sanctions such a result. The purpose and history of the Wreck Act indicates that an owner's financial responsibility for raising a vessel under the Wreck Act is not eliminated when the wreck is sold.

The Fifth Circuit has stated that "[t]he duty of an owner whose actions are responsible for the sinking is non-delegable and inescapable." *Tennessee Valley Sand & gravel Co. v. M/V Delta*, 598 F.2d 930, 933 (5th Cir. 1979). It has also stated that "the owner of a vessel sunk without any negligence on his part is still subject to the statutory obligation to remove the wreck." *Id*. at 934 (5th Cir. 1979). "If [the negligent owner] fails to act to remove the obstruction, the government may undertake the task in the interest of navigational safety, and the owner will be held liable not only for this cost, but for any damage caused by the wreck in the meantime." *Id*. (citations omitted). In 1986, the Wreck Act was amended so that an innocent owner could no longer avoid financial responsibility for the removal of a sunken vessel by abandoning it to the government. *See In re Southern Scrap Material Co., L.L.C*., 541 F.3d 584, 591-92 (5th Cir. 2008). If an owner abandons the vessel, the owner is still subject to liability to the United States for reimbursement of removal costs. Consistent with the purpose and history of the Wreck Act, the Court finds that a vessel owner's responsibility under the Wreck Act is inescapable, regardless of a subsequent sale to a third party, and regardless of whether a third party undertakes the task of removal.

As the Plaintiffs suggest, an owner and subsequent purchaser may be jointly and severally liable for the costs of removal. *US v. Blaha*, 889 F.2d 422 (2nd Cir. 1989). But whether a subsequent owner is jointly liable for the costs of removal is of no consequence here; the owner is still subject to a compulsory obligation under the Wreck Act. Nevertheless, this does

not resolve the issues in the instant case, because the Defendants seek to dismiss the case based upon the amount of proceeds the Plaintiffs received from the sale of the vessel. The Court will now turn to that issue.

C.        **Motion for Summary Judgment as to Salvage Value Credit**

In May of 2005, the ANDRE DANOS was appraised for $4 million. This is the same amount that was allotted for the sunken vessel under the terms of the APA. This sum was received by the Plaintiffs as the portion allotted for the ANDRE DANOS. Article 7(a) of the Primary Protection and Indemnity policy issued to the Plaintiffs states, with respect to costs for wreck removal, "There shall be deducted from such claim for cost or expenses the value of any salvage from or which might have been recovered from the wreck, inuring, or which might have inured, to the benefit of the Assured." The purpose of insurance is to make the insured whole for any loss covered by the policy but not to permit unjust enrichment.

The Defendants argue that the $4 million represents the value of the salvage, and this sum was paid to the Plaintiffs. Thus, the Defendants are entitled to a deduction of that amount. Since that amount exceeds the wreck removal claim of $2,049,911.22, the Defendants argue the Plaintiffs' claim should be extinguished. The Plaintiffs agree that a deduction should be made for the value of the salvaged vessel. However, the Plaintiffs argue that the $4 million figure was the value of the ANDRE DANOS pre-sinking and that credit should be based on the value of the vessel *after* it has been raised. The Plaintiffs contend that the ANDRE DANOS was so mangled, they had to pay Larose Scrap $150,000 to take the wreck off their hands. Thus, according to the Plaintiffs, the Defendants should receive no credit for the value of the salvage because the vessel had negative value. But they do not dispute that the sum they received included the $4 million that was allotted for the ANDRE DANOS.

The Court finds that the $4 million reflects the value of the salvaged vessel, notwithstanding Plaintiffs' argument that the amount reflects only the pre-sinking allocation of the proceeds of the sale of the vessel. Although the liftboat had capsized, the Plaintiffs' previous memoranda to the Court indicated that there were other market forces driving the value of the vessel upward after the hurricane.[6] The Plaintiffs argue that the ANDRE DANOS was heavily damaged, requiring a downward price adjustment. However, on August 30, 2005, the value of liftboats was greater than just one day before. The Plaintiffs were assured that the vessel could be raised in just a matter of days. Hercules, the purchaser of the vessel, did not want the sunken liftboat to get into the hands of its competitors. As a result, the Plaintiffs engaged in a rigorous negotiations with regard to the purchase price. The $4 million was the sum agreed upon and actually paid for the ANDRE DANOS by a willing buyer after full negotiation with a willing seller, after the hurricane. Thus, it reflects the value of the salvaged vessel which was in fact received by the Plaintiffs. There is nothing in the APA to reflect otherwise.

The Plaintiffs further claim that the $4 million was paid to Danos Marine, the owner of the vessel, while Danos & Curole, the bareboat charterer of the ANDRE DANOS, the party obliged to raise the vessel, and who contracted with and paid Bisso Marine for the salvage, did not receive any of that money. Thus, since Article 7(a) of the P&I policy provides for a credit for the "value of any salvage" that inured to the assured, and since none of the $4 million went to the assured that incurred the costs of removal, the Plaintiffs contend that Article 7(a) is inapplicable. The Court finds the Plaintiffs' arguments regarding the allocation of the $4 million unavailing. Both Danos & Curole and Danos Marine were parties to the APA and the P&I policy.[7] The P&I

---

[6] *See* Rec. Doc. No. 76.

[7] *See* Rec. Doc. Nos. 101-5 and 101-12.

policy states that the assurer will pay the expenses that the assured has become liable to pay, including liability for costs of removal of the wreck of the vessel when such removal is compulsory by law, provided, however, that there shall be a deduction for the value of any salvage that inured, or which might have inured, to the benefit of the assured.[8] If Danos Marine "in reality received for the Andre Danos what [Danos & Curole] as bareboat charterer owed by virtue of not returning the liftboat in the same order and condition as when initially delivered to the charterer,"[9] this does not change the nature of the payment as value that inured or might have inured to the benefit of the assured. The Plaintiffs provide various reasons why they decided to transfer the $4 million to Danos Marine, but since it is value that inured or might have inured to the benefit of the assured, the Defendants are entitled to deduct the amount from any claim for reimbursement of wreck removal expenses.

## IV.     CONCLUSION

Accordingly, for the foregoing reasons, IT IS ORDERED that the Plaintiffs' Motion for Partial Summary Judgment is GRANTED. IT IS FURTHER ORDERED that the Defendants' Motion for Summary Judgment is GRANTED, and the Plaintiffs' claims are dismissed, with costs and with prejudice.

New Orleans, Louisiana this 16th day of April, 2009.

_____
UNITED STATES DISTRICT JUDGE

---

[8] Rec. Doc. No. 101-12.

[9] Pl.'s Response Mem. at 10 (Rec. Doc. No. 76).